United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSHUA PRICE-MAHDI,

    Petitioner,

  v.

RICH SUBIA, Warden,

    Respondent.

_____/

No. C 07-5343 MHP (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**INTRODUCTION**

  This is a federal habeas corpus action filed by a <u>pro se</u> state prisoner pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the petition is DENIED.

**BACKGROUND**

  In 1996, a Contra Costa County Superior Court jury found petitioner guilty of first degree murder.[1]  The trial court sentenced petitioner to twenty-five years-to-life in state prison.  Petitioner sought, but was denied, relief on direct and collateral state review.  This federal petition followed.[2]

  Evidence presented at trial showed that in 1993, petitioner participated in the robbery of a "convenience" store, and the murder of its employee, Jahlman Singh.  The state appellate court summarized the facts as petitioner gave them during one of his police interviews:

1
2
3
4
5
6

[Petitioner] said he was in his bedroom at about 11 p.m. on July 2, when Leon Walker pulled up in front of his house and honked. [Petitioner] went outside, and Walker invited him to join them (Walker, Walker's brother Will Moss, Jr. and Pecollian "Pico" Mays) driving around and having some "40's" (40 ounce beers). [Petitioner] went with them, but he did not drink. As they were driving around, Moss said he was low on money and began to talk about "doing a lick," that is, robbing a liquor store. Moss suggested doing the QuikStop. They drove there, determined there was no business going on, parked across the street and got out of the car wearing bandannas. [Petitioner] wore a black bandanna Moss gave him. [Petitioner] split off from the other three to urinate in some bushes. Then he rejoined them and was the second or third person to enter the store, after Moss and possibly Walker.

7
8
9
10
11
12
13

[Petitioner] saw that Moss had the victim on his knees; he heard the wooden broom handle hit the floor. The victim was saying, "No, no, no." [Petitioner] jumped over the counter. He saw Walker pull the plug on the video camera and attempt unsuccessfully to open the metal box containing the video machine. Moss moved the victim behind the counter and ordered him to open the cash registers, which he did from his kneeling position. [Petitioner] and Mays took money from a cash register, [petitioner] taking $40 and some snack items. [Petitioner] went back over the counter and left the store, after which he heard what sounded like one gunshot. He went to the car, followed shortly by Walker and moments later by Moss and Mays. Moss said, "We smoked that dude." [Petitioner] did not feel well and wanted to go home. They drove to a park, threw their clothing in a garbage can, divided the money, and went home.

14   (Ans., Ex. C-6 at 4.)

15          Petitioner was tried on a felony murder theory, burglary being the predicate felony

16   offense. At petitioner's trial, the prosecutor read into the record a transcript of petitioner's

17   testimony at a prior proceeding. (Id., Ex. B-11 at 870ff.) In his prior testimony, petitioner

18   admitted that the group was going on a "beer run," an event petitioner described as entailing

19   entering a store, taking something to drink, and running off without paying for it. (Id. at

20   873–74.) Petitioner admitted in this prior testimony that he had participated in such events

21   before, and that such an act constituted stealing. (Id. at 874.) The Court notes that at the

22   time of the relevant events, petitioner, Walker, Moss, and Mays were under twenty-one, and

23   therefore could not legally purchase alcohol.

24          According to petitioner, Moss was not tried, but instead pleaded guilty to voluntary

25   manslaughter in exchange for the dismissal of the charges for murder and robbery with a

26   special circumstance. (Pet., P. & A. at 7.) Mays was tried — and acquitted — of a charge of

27   first degree murder, under the felony-murder theory that Singh was killed during the course

28

1   of a robbery.  (Id. at 16.)

2       According to petitioner, the prosecution tried petitioner on the theory that Moss shot

3   Singh in order to advance petitioner's theft of a bottle of beer.  Petitioner contends that this

4   theory of guilt is consistent with the prosecution's theories of guilt against Moss and Mays,

5   thereby violating his right to due process.

6       The state superior court, in the last reasoned state decision, rejected this claim in its

7   denial of petitioner's habeas petition:

8       Due process does not require that all participants in a crime face identical
        charges.  Such a requirement would be inimical to the principle that the charges
9       leveled against a particular defendant should be tailored to that defendant's
        criminal responsibility, not that of any accomplices.

10
        In this case, there is a completely understandable reason why [petitioner's] jury
11      was instructed on first degree felony murder committed during the course of a
        burglary.  This is because Petitioner testified on his own behalf at trial.
12      Petitioner's testimony included that he entered the Quik Stop to do a "beer
        run," that is, steal some beer, and that he actually stole beer from the Quik
13      Stop, in addition to some chips and candy.
        . . . .
14
        In contrast to the disturbing facts of Sakarias, the presentation of a burglary
15      instruction to Petitioner's jury based on Petitioner's own testimony that he
        entered the Quik Stop to do a beer run did not compromise fundamental
16      fairness.  Neither the record nor Petitioner presents any reason to believe that
        the Contra Costa District Attorney deliberately manipulated the evidence at
17      Petitioner's trial or attempted to attribute to two different defendants a criminal
        act that only one of the defendants could have committed.  Unlike the situation
18      presented in Sakarias, Petitioner has not demonstrated that mutually
        inconsistent and irreconcilable theories were used to convict him and one of his
19      accomplices.

20  (Pet., Ex. 1 at 2 & 4.)

21      As grounds for federal habeas relief, petitioner alleges that his right to due process

22  was violated because the prosecutor presented a theory of guilt at petitioner's trial that was

23  inconsistent with the one the prosecutor advanced at the separate trial of his co-perpetrators

24  Moss and Mays:

25      Moss's guilt[y] plea shows that Moss was not charged with burglary or aiding
        and abetting petitioner's shoplifting burglary, which would have been
26      necessary for a theory that Moss shot Singh to advance petitioner's shoplifting
        burglary.  At Mays['s] trial, Mays also was not charged with burglary or aiding
27      and abetting petitioner's shoplifting burglary.  Mays was prosecuted for aiding
        and abetting Moss in robbing and killing Mr. Singh.

28

3

(Pet., Mem. of P. & A. at 17.)  Petitioner contends that the presentation of such inconsistent theories of guilt was taken in "bad faith to prevent the jury from seeing evidence showing the felony/murder theories against the sep[a]rate defendants were inconsistent."  (Id. at 9.)

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.

**DISCUSSION**

Petitioner's claim fails.  Firstly, Petitioner cites no federal authority in direct support of his claim.  Rather, he cites two California Supreme Court cases, which, being state cases, do not provide a basis for relief under AEDPA.  Second, the relevant federal case law does not support petitioner's claim.  To begin, there is no clearly established Supreme Court precedent to support petitioner's claim, and the Court has explicitly said so.  "This Court has never hinted, much less held, that the Due Process Clause prevents a State from prosecuting defendants based on inconsistent theories."  Bradshaw v. Stumpf, 545 U.S. 175, 190 (2005) (Thomas, J., concurring).

Furthermore, the Ninth Circuit has held that it is not per se unconstitutional for a prosecutor to present inconsistent theories of guilt against co-perpetrators who are tried separately.  Due process rights may be implicated, however, if a prosecutor "knowingly uses false evidence or acts in bad faith" in the "pursuit of fundamentally inconsistent theories in separate trials against separate defendants charged with the same murder."  Nguyen v. Lindsey, 232 F.3d 1236, 1240 (9th Cir. 2000).  In Nguyen, the Ninth Circuit found that the presentation of inconsistent theories did not violate due process:

> Petitioner makes no contention in this case that the evidence introduced against him was falsified or that she acted in bad faith.  The California Court of Appeal found as a matter of fact that the prosecution presented the same underlying theory of the case at each trial — **when a shot kills a third person in a voluntary gun battle, the initiator and those who voluntarily took part in the mutual combat are responsible for the crime**.  As to who fired the first shot, it is true that the prosecutor made different arguments at each trial, but it is also true that these arguments were consistent with the evidence actually adduced at each trial.

(Id. at 1240) (emphasis added).  The Nguyen court took pains to distinguish the facts from those of another case in which the prosecution's presentation of inconsistent theories violated due process:

> This is not like the prosecutorial misconduct found by this court in Thompson v. Calderon, 120 F.3d 1045, 1057–59 (9th Cir. 1997), rev'd, 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998).  In Thompson, we found that in the second trial of defendant Leitch the prosecutor manipulated evidence and witnesses and "essentially ridiculed the theory he had used to obtain a conviction and death sentence at Thompson's trial."  Id. at 1057.  The positions

United States District Court

For the Northern District of California

1

2

3

> taken by the prosecutor in that case were fundamentally inconsistent because different defendants were charged in separate trials with the same murder that had been committed by an individual. <u>Id.</u> at 1054–56.  In this case, both defendants could be guilty of the same crime because of the nature of the crime — the murder of an innocent bystander during gang warfare.

4 (<u>Id.</u>)

5       Applying these principles to the instant matter, the Court concludes that petitioner is

6 not entitled to habeas relief.  Firstly, as stated by the Supreme Court, there is no clearly

7 established federal law that supports the assertion that due process is violated if defendants

8 are prosecuted on inconsistent theories.  Secondly, even if this were not so, neither the facts

9 of the case nor Ninth Circuit law support petitioner's claim.  As to the relationship between

10 Moss's conviction and petitioner's, Moss had no trial, having pleaded guilty, and therefore

11 the prosecutor did not present any theory of criminal liability, inconsistent or otherwise.  As

12 to the individual trials of Mays and petitioner, the record does not support the conclusion that

13 the theories were factually inconsistent.  Rather, the prosecutor presented <u>different</u> theories

14 of criminal liability at each trial, not factually or legally inconsistent ones.  In truth, each

15 theory was supported by the record, and, therefore there is nothing in the record to suggest

16 that the prosecutor presented falsified evidence, or that the prosecutor acted in bad faith.

17 Accordingly, there is no basis to support petitioner's due process claim.  <u>See</u> <u>Nguyen</u>, 232

18 F.3d at 1240.  Specifically, petitioner admitted in his prior testimony, which was read at his

19 trial, that he knew the group was going on a "beer run," which meant to steal alcohol.  Such

20 testimonial evidence provides a factual basis on which the prosecutor could found

21 petitioner's criminal liability on a felony-murder theory.

22       That Mays was tried on an aiding-and-abetting the robbery theory is not inconsistent

23 with this theory of criminal liability.  In California, a "person aids and abets the commission

24 or attempted commission of a crime when he, with knowledge of the unlawful purpose of the

25 perpetrator and with the intent or purpose of committing or encouraging or facilitating the

26 commission of the crime by act or device, aids, promotes, encourages or instigates the

27 commission of a crime."  CALJIC No. 301.  Facts exist to support the elements of this

28

1   offense. According to petitioner's admissions, the group, which included Mays, knew they

2   were going to steal alcohol. So, with the knowledge that crimes was to be committed, Mays

3   committed actions during the offense that aided, promoted, encouraged, and facilitated the

4   commission of the crime. Petitioner has not shown, nor can the Court find, anything in the

5   record that indicate that these two theories of criminal liability were inconsistent.

6        Nor is there is nothing in the instant matter that suggests a situation similar to that

7   disapproved of in Thompson, where the positions taken by the prosecutor were

8   fundamentally inconsistent because different defendants were charged in separate trials with

9   the same murder that had been committed by one individual. Id. at 1054–56.

10       Accordingly, petitioner's claim is DENIED.

11                                     **CONCLUSION**

12       The state court's adjudication of the claim did not result in a decision that was

13  contrary to, or involved an unreasonable application of, clearly established federal law, nor

14  did it result in a decision that was based on an unreasonable determination of the facts in

15  light of the evidence presented in the state court proceeding. Accordingly, the petition is

16  DENIED.

17       Petitioner's request for an evidentiary hearing, which he filed as part of his traverse,

18  see Docket No. 35, is DENIED.

19       A certificate of appealability will not issue. Reasonable jurists would not "find the

20  district court's assessment of the constitutional claims debatable or wrong." Slack v.

21  McDaniel, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from

22  the Court of Appeals.

23       The Clerk shall enter judgment in favor of respondent, and close the file.

24       **IT IS SO ORDERED**.

25  DATED:  10/5/2010

26                                     MARILYN HALL PATEL
                                       United States District Judge
27

28

**United States District Court**
For the Northern District of California

## NOTES

1.  This was petitioner's second trial on these charges.  A first trial had ended with mistrial when the jury deadlocked.  (Ans., Ex. C-6 at 1.)

2.  This claim survived a motion to dismiss on grounds of untimeliness because petitioner asserted that he did not become aware of the facts underlying the prosecutions of his co-perpetrators until 2006.